VALENTI LAW APC
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
10174 Austin Drive #1116
Spring Valley, CA 91979
Phone: (619) 540-2189

Attorney for Scott Schutza

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT SCHUTZA,<br><br>Plaintiff,<br><br>vs.<br><br>R.J. KATES COMPANY, INC.; SETAK HOLDINGS LLC; and DOES 1-10,<br><br>Defendants. | Case No.: '26CV5018 W GC<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |

> *"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

> *"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff SCOTT SCHUTZA, (hereinafter referred to as "Plaintiff") complains of R.J. KATES COMPANY, INC., a California corporation doing business as R.J. KATES WELDING EQUIPMENT; SETAK HOLDINGS LLC, a California limited liability company; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I. PARTIES

1. Plaintiff SCOTT SCHUTZA is a California resident and a qualified physically disabled person. He cannot walk due to paraplegia and uses a wheelchair for mobility. Plaintiff prides himself on his independence and on empowering other disabled persons to be independent.

2. Defendants R.J. KATES COMPANY, INC., SETAK HOLDINGS LLC, and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to

amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4. Defendants own and owned the property located at 9176 Kearny Villa Ct., San Diego, CA 92123 ("Subject Property") at all relevant times.

5. Defendants operate and operated a welding equipment repair and rental facility doing business as R.J. KATES WELDING EQUIPMENT ("welding equipment shop"), located at the Subject Property, at all relevant times.

6. Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III. FACTS

10. Mr. Schutza uses a wheelchair for mobility.

11. Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12. Mr. Schutza went to the welding equipment shop on June 30, 2026 to get an estimate for having his welding tool repaired. He returned to the shop on July 7, 2026 to speak with an employee regarding the estimate and to look at potential replacements. He decided not to have the tool repaired and intends to return at some point in the future to purchase a new welding tool. The estimate he received for the repair is shown in the photo below.



SAN DIEGO
9176 KEARNY VILLA CT.
SAN DIEGO, CA 92123
(855) 223-WELD

LOS ANGELES
14114 ALONDRA BLVD.
SANTA FE SPRINGS, CA 90670
(855) 443-WELD

R.J. KATES company
WELDING EQUIPMENT
RENTALS · REPAIRS
SALES
SINCE 1969
www.rjkates.com

LAS VEGAS
950 EMPIRE MESA WAY
HENDERSON, NV 89011
(855) 663-WELD

PHOENIX
1620 S. 27TH AVE.
PHOENIX, AZ 85009
(855) 883-WELD

WORK ORDER

| Date | Transaction No |
|---|---|
| 07/07/2026 | 39890-5 |

INVOICE: CASH ACCT SAN DIEGO
CALIFORNIA, United States

SHIP TO: SCOTT 619-2448632
California, United States

| | | | |
|---|---|---|---|
| Quotation No. | 0 | Customer No. | CASHSD |
| Reservation No. | 0 | Customer PO | |
| Contract No. | 0 | Starting | 06-30-2026 |
| Representative | AMADO PEREZ | End | 07-28-2026 |

| Item | Description | Qty Ord. | Qty Del. | Qty BO | Price | Total |
|---|---|---|---|---|---|---|
| | MILLER-MATIC 200 | | | | | |
| | S/N JJ432031 | | | | | |
| LABOR | HOUR | 1.00 | 1.00 | .00 | 110.00 | 110.00 |
| EVALUATION NOTE | ADD'L PARTS/LABOR MAYBE REQUIRED BASED ON FURTHER EVAL | 1.00 | .00 | 1.00 | | |
| EVALUATION NOTE1 | UPON APPROVAL MIN RESTOCK FEE MAY APPLY | 1.00 | .00 | 1.00 | | |
| MIL 245096 | RECT 300. 500V DO-9 (REVERSED) MODIFIED DIODE | .00 | .00 | .00 | | |
| MIL 245097 | RECT 300. A 500V DO-9 (STRIAGHT) MODIFIED DIODE (037956) | .00 | .00 | .00 | | |
| MIL 057608 | RECEPTACLE JACK PLUG YELLOW | .00 | .00 | .00 | | |
| MIL 252907 | DEF PRP 60A 3P 120 VAC COIL W/COVER CONTACTOR | .00 | .00 | .00 | | |
| | TECHNICIAN INSPECTED UNIT, CONTACTOR IS ARCED OUT DUE TO THE DIODES BEING DEFECTIVE. TRANSFORMER WAS ALSO DAMAGED, ONE OF THE CONNECTIONS ARE BURNT. TRANSFORMER IS OBSOLETE. HIGH DOLLAR REPAIR WITH A CHANCE OF REQUOTE. DECLINE | | | | | |

Delivery Notes:

Rental
Sales and Service
Shipping

13. On Plaintiff's first visit to drop off his welding tool, he searched the parking facility for a disabled stall and soon realized there was no disabled parking available whatsoever. Frustrated and anxious about the inconvenience and risk of

physical injury he would be facing, Plaintiff found a standard stall and parked his vehicle. Plaintiff found his own route to and from the entrance of the shop while also bringing his welding tool with him. This was stressful, frustrating, and embarrassing for Plaintiff.

14. Parking in a standard stall puts disabled customers risk of being hit by a car while transferring to and from their wheelchair. Without one, disabled customers are also denied their legal right to the shortest accessible route available. They are placed at risk of personal injury as they navigate their own route to and from the entrance of the business. Wheelchair users such as Plaintiff are forced to wheel behind parked cars and travel against oncoming vehicular traffic on their way to and from the entrance.

15. Parking in a standard stall which has no adjacent access aisle available also places wheelchair users at risk of being blocked in by other vehicles and unable to get out of their vehicle or get back into it.

16. In addition to the architectural barriers posed by the lack of accessible parking and accessible route, Defendants have discriminatory policies, practices, and procedures of knowingly and willfully refuse to provide a disabled parking stall and adjoining access aisle legally required by the Americans with Disabilities Act and the California Building Codes.

17. Defendants' discriminatory policies, practices, and procedures require disabled wheelchair users, including Plaintiff, to find and utilize unprotected and inaccessible parking because they do not provide any accessible parking.

18. Because of these entirely preventable barriers, policies, practices, and procedures, Plaintiff did not have full and equal access to R.J. Kate's Welding Equipment and its facilities.

19. This lawsuit is the result of Defendants' disregarding their accessibility obligations under the law.

20. During Plaintiff's visits, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

21. Plaintiff encountered discriminatory barriers, policies, practices, and procedures that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property. These policies, practices, and procedures violate the Americans with Disabilities Act.

22. These discriminatory barriers, policies, practices, and procedures are enacted and followed by Defendants in the ordinary course of business, not in response to isolated or temporary interruptions in service or access due to maintenance or repairs.

23. The discriminatory barriers, policies, practices, and procedures create barriers to accessibility for their disabled customers such as Plaintiff. These barriers, policies, practices, and procedures violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2025 CBC").

24. The barriers, policies, practices, and procedures existed during Plaintiff's two visits to the welding shop. Plaintiff personally encountered these discriminatory policies and procedures.

25. The barriers, policies, practices, and procedures denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

26. According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in

terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

27. When parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2025 CBC 11B-502 et seq; 2025 CBC 11B-208.2.

28. However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or spaces are significantly noncompliant with the applicable ADA and CBC standards.

29. There is no accessible parking whatsoever for disabled persons at the Subject Property.

30. There is no ADA compliant parking. ADA 2010 §502 et seq.; 2022 CBC 11B 502 et seq.

31. There is no ADA compliant parking signage. ADA 2010 §502.6; 2022 CBC 11B-502.6, 11B-703.7.2.1.

32. There is no access aisle provided. Adjacent access aisles protect the clear space needed for a wheelchair user to transfer safely into and out of their vehicle. When a vehicle parks too closely to a disabled person's vehicle, disabled people are also sometimes stuck waiting for the other driver to return and move their automobile before they can get back into their own vehicle. This results in disabled persons waiting several minutes to hours before they can again gain access to their vehicle. ADA 2010 §502.3; 2025 CBC 11B-502.3; 2025 CBC 11B-108; 28 C.F.R. §36.211(a).

33. There is no sign in a conspicuous place at the entrance to the facility, or immediately adjacent to on-site accessible parking and visible from each parking space, stating that vehicles parked in designated accessible spaces not displaying a disabled placard or license plate will be towed. 2025 CBC 11B-502.8.

34. There is no accessible route to the entrance of the R.J. Kate's Welding Equipment. Disabled customers such as Plaintiff are required to find their own route to and from the entrance of the store based on wherever they can find parking. Disabled customers such as Plaintiff are required to travel behind parked cars and against oncoming vehicular traffic as the navigate the parking facility without protections. Defendants place their disabled customers at risk of being hit by a car on their way to and from the entrance of the welding shop. In parking lots or garages, accessible parking spaces must be located on the shortest accessible route to the accessible entrance. 2010 ADA §206; 2010 ADA §206.21; 2010 ADA §206.3; 2010 ADA §208.3.1; 2025 CBC 11B-206; 2025 CBC 11B-206.21; 2025 CBC 11B-208.3.1; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

35. Defendants have failed to maintain accessible features. 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

36. Because of the lack of compliant parking and a compliant access aisle, Plaintiff was forced to park in a standard stall during both of his visits. Plaintiff was also forced to park further from the entrance of the shop than necessary. Without compliant parking or a compliant adjacent access aisle, Plaintiff was placed at risk of being blocked in by other vehicles and unable to get out of his vehicle or get back into it. He was also at greater risk of being hit by a car while transferring to and from his wheelchair. Because of the lack of a compliant route, Plaintiff had difficulty accessing the entrance on both of his visits and was at greater risk of being hit by a car traveling to and from the entrance to the welding shop. For all the above reasons, Plaintiff felt stressed and was concerned about his

personal safety and the frustration and inconvenience he would incur if he was blocked in by another customer.

37. These barriers, policies, procedures, and practices and barriers denied Plaintiff full and equal access due to his disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

38. Plaintiff intends to return to the Subject Property in the near future to shop for a new welding tool or other supplies. Plaintiff is currently deterred from returning because of the knowledge of the barriers to equal access that relate to Plaintiff's disabilities which continue to exist at Defendants' public accommodation facilities.

39. Plaintiff alleges that Defendants knew that the barriers prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

40. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

41. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2025 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed. It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features

> are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

42. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

43. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

44. On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

45. The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff may encounter when he returns to the premises. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

/ /

/ /

/ /

## FIRST CAUSE OF ACTION

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq*.)

(Against All Defendants)

46. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

47. More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

48. In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

49. In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

50. As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

51. The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

52. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

53. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

54. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

55. On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

56. Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

57. Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

**SECOND CAUSE OF ACTION**

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

58. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

59. California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

60. California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

61. California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

62. California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

63. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

64. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

65. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

66. The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

67. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable

by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4. Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5. Grant such other and further relief as this Court may deem just and proper.

DATED: September 3, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Scott Schutza

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: September 3, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Scott Schutza